**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| HUNTER KILLER PRODUCTIONS, INC., § § § | |
| Plaintiff, § § | |
| v. § | EP-20-CV-00306-FM |
| § | |
| SABRINA BOYLAN and JOHN DOES 1-5, § § § | |
| Defendants. § | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR EXPEDITED DISCOVERY

Before the court is "*Ex Parte* Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference and Memorandum of Points and Authorities" ("Motion") [ECF No. 8], filed December 23, 2020 by Hunter Killer Productions, Inc. ("Plaintiff"). Therein, Plaintiff requests leave to pursue expedited discovery in order to determine the identities of John Does 1-5 ("Defendants").[1] Upon due consideration of the Motion and applicable law, the Motion is **GRANTED IN PART AND DENIED IN PART**. Plaintiff may serve a Rule 45 subpoena on AT&T U-verse, Spectrum, and Verizon Wireless for the names, billing addresses, and physical addresses of subscribers associated with the relevant IP addresses, but may not request additional contact information.

### I.   BACKGROUND

This case arises from allegations of copyright infringement. BitTorrent is one of the most common peer-to-peer file sharing protocols used for distributing large amounts of data.[2] The

---

[1] "*Ex Parte* Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference and Memorandum of Points and Authorities" ("Mot.") 2, ECF No. 8, filed Dec. 23, 2020.

[2] "Complaint" (Compl.") ¶ 36, ECF No. 1, filed Dec. 9, 2020.

1

BitTorrent protocol distributes large files without creating a heavy load on the source computer and network by allowing users to join a "swarm" of host computers.[3] A BitTorrent Client is a software program that implements the BitTorrent Protocol.[4] "Torrent sites" are websites that index torrent files currently made available for copying and distribution by people using the BitTorrent protocol.[5]

Plaintiff is the owner of the copyright for the motion picture *Hunter Killer* (the "Work").[6] Plaintiff asserts Defendants used a torrent site known as YTS, either directly or via a BitTorrent Client such as Popcorn Time, to download a torrent file for copying the Work.[7] Defendants then copied, publicly performed, displayed, reproduced and distributed copies of the Work.[8] Defendants also removed or altered copyright management information of the Work, thereby further facilitating further copyright infringements.[9]

As Defendants acted anonymously on the internet, their identities are unknown. However, Plaintiff knows the IP addresses from which Defendants committed the infringements and the times at which the infringements occurred.[10] An IP address is a number assigned by the Internet Service Provider ("ISP") to devices, such as computers or cell phones, that are

---

[3] *Id.* at ¶ 37.

[4] *Id.* at ¶ 38.

[5] *Id.* at ¶ 52.

[6] Compl. ¶ 7. *See also* "Certificate of Registration," ECF No. 1-2, Ex. 2.

[7] Compl. ¶ 39–41.

[8] *Id.* at ¶¶ 91-101.

[9] *See Id.* at ¶¶ 116-22.

[10] *Id.* at ¶ 24.

connected to the internet.[11]  Publicly available data allowed Plaintiff to identify the specific ISPs Defendants used as AT&T U-verse, Spectrum, and Verizon Wireless.[12]  The data also allowed Plaintiff to identify the city or area associated with the IP addresses.[13]  Plaintiff seeks to serve Defendants' ISPs and any related intermediary ISPs with subpoenas for the names, billing addresses, physical addresses, telephone numbers, email addresses, and Media Access Control addresses of the subscribers assigned the IP addresses identified as those used to commit copyright violations.[14]

## II.     LEGAL STANDARD

### A.     *Subpoenas for ISP Subscriber Identities*

The Millennium Act permits "a copyright owner . . . [to] request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer."[15]  In order to seek a subpoena for identifying information of users, courts weigh several factors to balance the need for disclosure against the defendant's First Amendment expectation of privacy.  These factors include: (1) a concrete showing of a *prima facie* claim of actionable harm by the plaintiff; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy.[16]

---

[11] *Id.* at ¶ 6.

[12] *Id.*, "Exhibit 1" 4, ECF No. 1-1, Ex. 1.

[13] Compl. ¶ 6.

[14] Mot. 5–6.

[15] 17 U.S.C. § 512(h)(1).

[16] *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 114 (2d Cir. 2010); *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC87 2874D0CC9B1372ECE5ED07AD7420A3BBB*, Case No. 4:12-cv-00963, 2012 WL 4387420, at *2 (S.D. Tex. Sept. 25, 2012).

## B.   *Expedited Discovery*

Pursuant to Federal Rule of Civil Procedure 26(d)(1) ("Rule 26"), a party generally may not seek discovery from any source before the parties have participated in a discovery conference. However, Rule 26 vests trial courts with "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."[17] A trial court may permit expedited discovery under certain circumstances.[18]

The Fifth Circuit has not determined the standard governing district courts' consideration of expedited discovery requests. However, most district courts have settled on a "good cause" rule.[19] Good cause exists where, considering the totality of the circumstances, the need for expedited discovery outweighs the prejudice to the responding party.[20] The burden is on the moving party to show good cause.[21] Courts often consider:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.[22]

---

[17] *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). *See also Mayo v. Tri–Bell Indus.,* 787 F.2d 1007, 1012 (5th Cir. 1986) ("control of discovery is committed to the sound discretion of the trial court").

[18] *See* FED. R. CIV. P. 26(d)(1). *See, e.g.*, *St. Louis Grp. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011).

[19] *See St. Louis Grp.*, 275 F.R.D. at 240 (collecting cases); 8A Charles Alan Wright, Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2046.1 (3d ed. 2020) ("[I]t is implicit that some showing of good cause should be made to justify such an order.").

[20] *See, e.g.*, *Dorrah v. U.S.*, 282 F.R.D. 442, 445 (N.D. Iowa 2012); *El Pollo Loco, S.A. de C.V. v El Pollo Loco, Inc.*, 344 F.Supp.2d 986, 992 (S.D. Tex. 2004).

[21] *St. Louis Grp*, 275 F.R.D. at 240; *Qwest Comm. Intern., Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

[22] *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58 (M.D. La. 2016); *St. Louis Grp*, 275 F.R.D. at 240, n. 4; *Disability Rights Counsel v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).

### III.  DISCUSSION

####   A.  *Subpoenas for ISP Subscriber Identities*

To show the need for disclosure of subscriber identities is greater than the First Amendment expectation of privacy a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[23]  First, Plaintiff successfully made a concrete showing of a *prima facie* claim for copyright infringement.  To do so, Plaintiff's ownership of a valid copyright is indisputable in light of the certificate of registration it included with its complaint.[24]  Additionally, Plaintiff made a *prima facie* showing that Defendants copied the Work.  Plaintiff's retained computer investigator identified the IP addresses being used by people using the BitTorrent protocol to reproduce, distribute, display, or perform Plaintiff's copyrighted Work.[25]  The investigator further determined users of those IP addresses installed a BitTorrent Client onto their respective computers, then went to a torrent site to download Plaintiff's copyrighted Work without Plaintiff's authorization.[26]

Plaintiff's discovery request is somewhat broader than necessary.  Therefore, the second factor cuts against it.  Plaintiff may conduct service and pursue its claims with only the names and addresses of the subscribers assigned the IP addresses used to commit copyright violation.[27]  In addition to these, Plaintiff requests telephone numbers, email addresses, and Media Access

---

[23] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 113 (5th Cir. 1978).

[24] *See* "Certificate of Registration," ECF No. 1-2, Ex. 2.

[25] Compl. ¶ 62.

[26] *Id*. at ¶ 66.

[27] *See* FED. R. CIV. P. 4(e) (detailing methods of service of individuals within a judicial district of the United States); *Malibu Media, LLC v. Doe*, Case No. SA-19-cv-00601-DAE, 2019 WL 3884159, at *3 (W.D. Tex. Aug. 16, 2019) (entering a protective order narrowing the scope of discovery to omit email addresses and telephone numbers).

Control addresses.[28] While potentially useful to Plaintiff, this information is in excess of that strictly necessary to identify and serve Defendants.

The third and fourth requirements are squarely met. Without taking steps to breach the anonymity of the internet, Plaintiff cannot serve Defendants and Defendants cannot respond to Plaintiff's allegations. As names and addresses are necessary to the vindication of Plaintiff's rights, the information is central to the claim. As Defendants are known only by their IP addresses, there is no way for Plaintiff to determine their identities without subpoenaing the names and contact information from the ISPs associated with the IP addresses. Therefore, reasonable alternative means of discovery do not exist.

Finally, courts have routinely held that a defendant's First Amendment privacy interest is small where the 'speech' is the infringement of copyrights.[29] In order to protect what expectation of privacy exists, some courts have *sua sponte* paired subpoenas for identifying information with protective orders to limit discoverable information and permit defendants to contest the subpoena before their names are turned over to the plaintiff.[30] Such mitigating measures offset the potential for prejudice to defendants. As in those cases, Defendants' interest in online anonymity is small and may be guarded by the addition of a protective order. As such, the need for disclosure, on balance, outweighs Defendants' interest in privacy.

---

[28] Mot. 4.

[29] *See Artista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment"); *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (1979) ("The first amendment is not a license to trammel on legally recognized rights in intellectual property.").

[30] *See Malibu Media, LLC*, 2019 WL 3884159, at *2; *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 60 (M.D. La. 2016); *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC87 2874D0CC9B1372EC E5ED07AD7420A3BBB*, Case No. 4:12-cv-00963, 2012 WL 4387420, at *2 (S.D. Tex. Sept. 25, 2012).

### B. *Expedited Discovery*

As Plaintiff met its burden to show the need to subpoena ISPs for subscriber identities, the court now considers whether to expedite this discovery. The totality of the circumstances indicate good cause exists to do so.

Many of the considerations used to determine whether to permit expedited discovery echo the factors already found to favor disclosure. The request's purpose is fundamental to Plaintiff's ability to protect its copyright and necessary to conduct service. Unauthorized peer-to-peer file sharing relies on the anonymity of the internet. Without the ability to connect ISPs used to commit copyright violations to individuals, Plaintiff cannot protect its copyright from peer-to-peer sharing. While the request, as written, is overbroad, the court has the authority to permit more narrow discovery to protect Defendants' privacy interests.[31] Additionally, the burden on ISPs to provide subscriber information is low as ISPs assign IP addresses and maintain records in the course of their business.[32]

This court is not alone in weighing the factors to favor expedited discovery. A number of other courts, considering a virtually identical question, have found in favor of copyright holders and permit expedited discovery as a tool to subpoena ISPs for the identifying information of account holders with IP addresses linked to copyright violations.[33] In sum, good cause exists to support expedited discovery for the limited purpose of identifying Defendants and the addresses where Plaintiff may conduct service.

---

[31] *See* FED. R. CIV. P. 26; *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Mayo v. Tri–Bell Indus.,* 787 F.2d 1007, 1012 (5th Cir. 1986) ("control of discovery is committed to the sound discretion of the trial court").

[32] *See* Compl. 20.

[33] *See generally Malibu Media, LLC* , 2019 WL 3884159; *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58 (M.D. La. 2016); *Voltage Pictures, LLC v. Doe–50.141.97.4*, Case No. 3:14–CV–1872–AC, 2015 WL 1579533 (D. Or. Apr. 9, 2015); *McMann v. Doe,* 460 F.Supp.2d 259, 265–66 (D. Mass. 2006).

7

## IV.     CONCLUSION

The court finds the need for disclosure of the identities of ISP subscribers associated with IP addresses used to violate the Work's copyright, on balance, outweighs Defendants' interest in privacy.  The court further finds good cause exists to expedite the discovery process.  Accordingly, the court enters the following orders:

1) It is **HEREBY ORDERED** that "*Ex Parte* Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference and Memorandum of Points and Authorities" [ECF No. 8] is **GRANTED IN PART AND DENIED IN PART**.

2) It is **FURTHER ORDERED** that Hunter Killer Productions, Inc. ("Plaintiff ") may immediately **SERVE** a Rule 45 subpoena on AT&T U-verse to obtain the true name, billing address, and physical address of the individual to whom the ISP assigned the IP address 99.158.243.232.  A copy of this order shall be attached to the subpoena.

3) It is **FURTHER ORDERED** that Plaintiff may immediately **SERVE** a Rule 45 subpoena on Spectrum to obtain the true names, billing addresses, and physical addresses of the individuals to whom the ISP assigned the IP addresses 72.177.15.154; 24.175.230.34; and 72.177.15.154.  A copy of this order shall be attached to the subpoena.

4) It is **FURTHER ORDERED** that Plaintiff may immediately **SERVE** a Rule 45 subpoena on Verizon Wireless to obtain the true name, billing address, and physical address of the individual to whom the ISP assigned the IP address 174.244.82.187.  A copy of this order shall be attached to the subpoena.

5) It is **FURTHER ORDERED** that Plaintiff may also **SERVE** a Rule 45 subpoena in the same manner as above on any service provider that is identified in response to a subpoena as a provider of Internet services to Defendant.

6) It is **FURTHER ORDERED** that a subpoena served pursuant to this order is subject to the following protective order:

    a) The ISPs are **not** to release Defendant's telephone number, email address, or other contact information.

    b) The ISPs shall have **sixty days** from the date of service of the Subpoena upon it to serve Defendants with a copy of the subpoena and this order. The ISPs may serve Defendants using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class mail or via overnight service.

    c)    Plaintiff must serve Defendants with copies of all materials and information obtained about him or her.

    d)    Plaintiff must use the information disclosed in response to the subpoena for the **sole purpose** of protecting and enforcing its rights, as set forth in its complaint.

**SIGNED AND ENTERED** this **28th** day of **January 2021**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**